**B. Wayne HUDGENS et al., Appellants,**

**v.**

**BAIN EQUIPMENT & TUBE SALES, INC.,
Appellees.**

No. 564.

Court of Civil Appeals of Texas,
Corpus Christi.

Oct. 22, 1970.

John J. Pichinson, Victor Gillespie, Corpus Christi, for appellants.

Sorrell, Anderson, Sorrell & Atwill, James H. Atwill, William Whittle, Corpus Christi, for appellees.

## OPINION

GREEN, Chief Justice.

This is an appeal by defendants below from an order overruling their plea of privilege.

Appellee Bain Equipment & Tube Sales, Inc. filed suit against appellants B. Wayne Hudgens and Benton Donegan, d/b/a Traders Oil & Royalty, alleging an indebtedness of $897.77 for services performed by appellee at appellants' request during December 1967 and May 1968. Appellants "d/b/a Traders Oil & Royalty" filed a plea of privilege to be sued in the county of their residence, to-wit Guadalupe County, Texas. Subject to said plea they filed an answer containing a general denial

and special plea of limited partnership. Appellee Bain thereupon filed its controverting affidavit, making its petition a part thereof, in which it relied for venue upon Exceptions 5 and 23 of Art. 1995, Vernon's Ann.Tex.Civ.St.

On about December 9, 1967, appellee and appellant in a telephone conversation during which the parties were in Nueces County entered into an oral agreement that appellee Bain should sell to Traders Oil and Royalty certain pipe at an agreed price for use in an oil well located near Driscoll, Nueces County, Texas. The pipe was delivered to the specified location on the next day, and receipted for by one P. Villa, an employee of T. J. Service Company. The written delivery sheet signed by Villa contained on its bottom line the following language: "Terms: Net amount due 7 days after date of billing, at Corpus Christi, Nueces County, Texas." T. J. Service was doing a work-over job on the well for Traders Oil & Royalty, and Villa was the operator of the work-over rig. The evidence disclosed that Villa was authorized to receipt for delivery of the pipe, but was not authorized to bind appellants as to any method of payment of the bill.

Traders Oil & Royalty used the pipe on the lease, and later pulled it and re-used it on a well in Live Oak County. Appellee made repeated efforts to collect payment for the sale of the pipe, but appellants failed to pay. Later appellants agreed with appellee that the latter could get the pipe back off the location. Appellee thereupon contracted with a trucking firm to have the pipe pulled out of the well and transported to Corpus Christi, Nueces County.

This suit is not for the price of the pipe, as appellee gave appellants credit on its books for the sale price. Appellee seeks reimbursement of expenses reasonably incurred as the result of appellants' breach of contract, such damages including the expense of pulling the pipe and transporting it to Nueces County. This type of cause of action is provided for by the

Texas Uniform Commercial Code, Sec. 2.710, V.T.C.A., entitled "Seller's Incidental Damages", and reading as follows:

"Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach."

Appellants' brief is based on three points of error all directed at alleged error of the court in applying Sec. 5, Art. 1995 V.A.T.S. authorizing suit to be filed in the county where a written contract is made performable by the terms of the contract. We agree with appellants that there was no evidence to show that P. Villa was authorized to obligate appellants to perform any obligations under the oral contract between the parties in Nueces County. His sole authority, as testified to by appellee's witness on that question, was to receipt for delivery of the pipe. See K. T. Lease Service, Inc. v. Alamo Welding & Boiler Works, Inc., Tex.Civ.App., 431 S.W. 2d 58 n. w. h. We consequently hold that appellee did not establish venue in Nueces County under Sec. 5, Art. 1995.

Appellee also plead Sec. 23, Art. 1995, to establish venue in Nueces County. Although its pleadings of venue facts are very general, both in the petition and controverting affidavit, and would have been subject to motion or special exception, they were not attacked in the trial court.

"Where the defendant fails by exceptions or objections to evidence specifically to point up any omission or defect in the petition or the controverting affidavit, each will be liberally construed in the pleader's favor." McDonald's Texas Civil Practice, Vol. 1, p. 595, § 4.49.

See also Dillingham v. Associated Employers Lloyds, Tex.Civ.App., 233 S.W.2d 191, n. w. h.; Terrazas v. Carroll, Tex. Civ.App., 277 S.W.2d 274, n. w. h.; Appell

Petroleum Corporation v. G. W. Townsend Lease Service, Tex.Civ.App., 375 S.W.2d 547, n. w. h.; Darr Equipment Company v. Owens, Tex.Civ.App., 408 S.W.2d 566, n. w. h.

In the absence of exceptions to the pleadings, and of objections to the evidence, the record raises the issue of venue under Sec. 23. The applicable part of said section reads:

"*Corporations and associations.*—Suits against a private corporation, association, or joint stock company may be brought in the county in which * * * the cause of action or part thereof arose; * * *."

Appellant does not by any point of error attack the trial court's implied finding and conclusion that venue was proved under Sec. 23. Appellee's counter-point B reads:

"The Defendants were an association and Nueces County was the county in which the cause of action, or a part thereof, arose."

■ Appellee plead and proved a prima facie cause of action against appellants, a part of which arose in Nueces County. Appellee's petition and controverting affidavit and appellants' plea of privilege were the pleadings before the court on the venue issue. Corpus Christi Hardware Company v. Farrar, Tex.Civ. App., 417 S.W.2d 479, n. w. h. These pleadings and the evidence established that appellants were operating together in a partnership, d/b/a Traders Oil & Royalty, and that they were being sued in such capacity. The issue here is whether such partnership is to be considered as an "association" for venue purposes under Sec. 23.

Cases decided before the adoption of the present Texas Uniform Partnership Act, effective January 1, 1962, considered partnerships, for venue purposes, as an aggragate of partners acting as individuals under a contract, and did not regard the partnership as a legal entity. Hence, a partnership was not considered to be an "association" under Sec. 23, Art. 1995. Bubble Up Bottling Co. v. Lewis, Tex.Civ. App., 163 S.W.2d 875, n. w. h.; Heid Bros. v. Mueller-Huber Grain Co., Tex.Civ.App., 185 S.W.2d 470, n. w. h.; J. A. & E. D. Transport Co. v. Rusin, Tex.Civ.App., 202 S.W.2d 693, on rehearing 206 S.W.2d 95, n. w. h.; Hollis v. Boone, Tex.Civ.App., 315 S.W.2d 350, n. w. h.; Seguin Milling Company v. Reed Grain Company, Tex.Civ. App., 278 S.W.2d 330, n. w. h.

In his "Source and Comments" concerning the Texas Uniform Partnership Act (Art. 6132b V.A.T.S.), Professor Alan R. Bromberg of the Law School of Southern Methodist University writes (Vol. 17, Vernon's Civil Statutes of Texas, Annotated, p. 300):

"Aggregate and Entity Theories. Is a partnership an entity legally distinct from its partners, or is it just the aggregate of partners acting as individuals pursuant to a contract? If it is an aggregate, there are hopeless complications of property ownership and creditors' rights. If it is an entity in the extreme sense, partners would have no personal liability and little would remain to differentiate a partnership from a corporation. It is no wonder, then, that the question has plagued partnerships from the beginning, and that it has never been answered with full consistency.

The Uniform Partnership Act leans heavily toward the entity idea, which accords with business usage. The Texas version goes even further.

The only significant aggregate feature of the Act is the joint and several liability of partners (§ 15). Even this is phrased as liability for the obligations 'of the partnership'.

In contrast, entity notions permeate the Act, particularly four critical areas:" (See text for discussion)

* * * * * *

"The foregoing demonstrates that the great preponderance of the Texas Act

favors the entity theory. Cases not specifically covered by the Act should be decided in harmony with the dominant entity theory. This conclusion finds additional support in § 5 which calls for the Act to be supplemented by the law merchant which is traditionally associated with the entity view. Finally, it is consistent with other Texas law (preserved by § 46) permitting suits in the partnership name and service on one partner. Vernon's Ann.Rules Civ.Proc., rule 28; Vernon's Ann.Civ.St. arts. 2033, 2223."

We have found no Texas Supreme Court case on this question decided since the adoption of the Texas Uniform Partnership Act. However, in Penrod Drilling Company v. Johnson, 414 F.2d 1217, Chief Judge Brown wrote an opinion for the 5th Circuit Court of Appeals wherein the court outlined the effect of the entity theory and modern business, judicial and legislative trends on partnerships for venue purposes. The essential question was whether venue lay where the cause of action arose even though no partner lives there and it has no principal place of business there. The special venue provision of the Jones Act, under which the suit was brought, provided that a corporation may be sued in the judicial district in which it was doing business. The court applied Federal Rule Civil Procedure 17(b) (from which our Rule 28N[1] was taken verbatim) and stated as follows:

"This tiny step of assimilating partnerships with unincorporated associations for venue purposes is in keeping with the strong trend—judicial and legislative—toward making modern business entities amenable to suit in places where their business activities give rise to liabilities and obligations." (414 F.2d 1224)

We make no criticism of the decisions made before the passage of the Texas Uni-

form Partnership Law (Art. 6132b) that a partnership was not an association under Sec. 23, Art. 1995, and that such section did not control venue as to the individual partners. However, we agree with Professor Bromberg that the Texas Uniform Partnership Act effective January 1, 1962 favors the entity theory. Art. 6132b § 6(1), defines Partnership as "an association of two or more persons to carry on as co-owners a business for profit." We hold that appellants, d/b/a Traders Oil & Royalty, constitute an "association" within the provisions of Sec. 23, Art. 1995. The trial court properly overruled the plea of privilege.

Judgment affirmed.

---

1. Rule 28: *"Suits in Assumed Name.* A partnership or other unincorporated association, or an individual doing business under an assumed name, may sue or be sued in the partnership, assumed or common name for the purpose of enforcing for or against it a substantive right."